# 𝕽ichmond

## STATE REALTY CO., INC. v. HENRY WOOD, JR., AND BERENICE W. WOOD.

January 16, 1950.

Record No. 3552.

Present, All the Justices.

The opinion states the case.

*Nathan L. Silberberg,* for the plaintiff in error.

*James H. Simmonds* and *Robert C. Coleburn,* for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

The Tyler Corporation owned and developed a subdivision known as "Tyler Park," in Fairfax County. On August 2, 1947, it executed a written contract with Henry Wood, Jr. and Berenice W. Wood to sell them for $10,000 one of the houses constructed by it in Tyler Park. This contract, as well as other contracts of sale of lots in Section 4 of Tyler Park, contained the following provision: "In the event the Purchaser desires to resell said premises within five years of this date, he hereby grants to the Seller and/or its assigns the exclusive right to obtain a new purchaser, at the brokerage rates which may then be in effect. The purpose of this provision is to maintain the character of the Tyler Park development."

The Tyler Corporation, upon receipt of the purchase price of the property, conveyed the fee simple title, without reservation, restriction or condition, to the purchaser, and thereafter assigned its rights in the foregoing provision in the contract of purchase to State Realty Co., Inc., a licensed real estate broker.

In May, 1948, Mr. and Mrs. Wood, without notice to, or consulting the Tyler Corporation, or its assignee, sold and conveyed the premises for $13,000 to a third party. Immediately thereafter the State Realty Co., Inc., instituted

this action against them, alleging that the brokerage rate then in effect was 5%, and that defendants were indebted to it in the sum of $650.

The action was defended on the ground that The Tyler Corporation, assignor of the plaintiff, was not, and never had been, a licensed real estate broker. When this fact was conceded, the trial court dismissed the action on the ground that the contract made with an unlicensed real estate broker was void in its inception, and that the assignee acquired no rights under the assignment.

Plaintiff states its contention thus: "The Circuit Court erred in holding a real estate sales contract illegal because the seller, whose affiliate-assignee seeks damages for breach of a resale provision, was not a licensed broker, when, in fact, the assignee was so licensed."

Plaintiff cites numerous cases from other jurisdictions in support of its contention. However, these authorities are not persuasive, because the question must be determined by the Virginia statutes governing the licensing and regulating the business of real estate brokers. See Acts 1924, Chap. 461, p. 691; Code (Michie's), sec. 4359(77), etc.

The provision in question does not purport to be a reservation, restriction, or condition imposed by the seller for its benefit as the owner of land adjoining the lot in question, or for the mutual benefit of other parties acquiring lots in the subdivision. The last line reading "the purpose of this provision is to maintain the character of the Tyler development," squints at such a purpose, but it is too indefinite to be effective or enforceable.

No attempt is made to define "the character of the Tyler Park development." The purchaser is not informed whether such development is designed for restricted residential lots or for a business district. There is no limitation or restriction upon the seller to select a purchaser from any racial, social or religious group. He is free to sell to any one— to an Eskimo, Chinaman, Buddhist, Mohammedan or Communist.

The plaintiff does not contend that the phrase "to main-tain the character of the Tyler development" has any bear-ing upon the construction of the provision. It rests its con-tention squarely on the point that it was a licensed real estate broker and that the assignment gave it the exclusive right to sell the property for defendants if they desired to dispose of it within the five-year period.

The first question to be determined is whether the Tyler Corporation acquired an enforceable right to resell the prop-erty for defendants in the event it was sold within the time stated.

Code (Michie's), sec. 4359(77), makes it unlawful for any person to act, or offer to act, as a real estate broker without first obtaining a license. Subsection (88) of the same statute, provides that upon conviction of any person for violating any provision of the act, he shall be fined not more than $500, or imprisoned for not more than six months, or by both fine and imprisonment. Subsection (78) pro-vides that any person who, for compensation, sells, or offers to sell, real estate for another, is a real estate broker within the meaning of the statute.

This statute was construed, and many cases from this and other jurisdictions, were reviewed, in *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. (2d) 176. In that case the owner promised two unlicensed parties that he would pay them the usual brokerage if they consummated a sale of his land. The sale was consummated and the two unlicensed parties sought to recover the sum the land owner had promised to pay them. Mr. Justice Spratley, speaking for the court, said:

"We find nothing in the language of the statute, or the subject matter of the regulation, which indicates the slight-est intention to treat the contract as valid and enforceable between the parties, and simply to provide for the exaction of a penalty. There is nothing by which we can presume that it was intended that a violator should escape the ordinary consequences of his illegal acts.

"The agreement upon which the plaintiffs in error rely

is illegal, not merely invalid. It is void as being contrary to a positive statute and to public policy. Not merely the mode of its performance, but its substance is unlawful. The imposition of the penalty emphasizes the illegality."

This principle was reaffirmed in *Hancock Co.* v. *Stephens,* 177 Va. 349, 14 S. E. (2d) 332, where this was added: "although we recognize the apparent hardship sometimes resulting, we have consistently held that the courts will not aid a party to enforce an agreement made in furtherance of acts expressly made illegal by the statute."

If the Tyler Corporation, acting at the request of defendants, had obtained a purchaser for the property, and defendants had refused to pay them the 5% brokerage, no recovery could have been had against them, because the contract itself is illegal, "not merely invalid."

The Tyler Corporation having acquired no enforceable rights under the provision, it had none to assign. When plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. The basis of the action here is the illegal contract. *Miller* v. *Ammon,* 145 U. S. 421, 12 S. Ct. 884, 886, 36 L. ed. 759.

"The assignment of a brokerage contract does not serve to enable the assignee to collect commissions which the assignor could not have collected because he was not licensed to act as a broker." Annotation 169 A. L. R. 776.

The question whether or not all stipulations set forth in the contract of sale of the land were merged or discharged by the deed conveying the land in fee to the grantees, is not raised or discussed. One of the essential elements of a fee simple estate is an unlimited power of alienation. If the provision in the contract limits defendants' right to alienate the property only to a party selected by the seller, then this provision of the contract of sale is in conflict with the provisions of the deed conveying the property. However, as neither the complete contract nor the deed is filed with the record, we express no opinion on the subject

of merger or discharge, but base our decision upon the illegality of the contract.

· For the reasons stated the judgment of the trial court is

*Affirmed.*

. . .

EGGLESTON and BUCHANAN, JJ., dissenting.

We are not here dealing with a brokerage contract but with a contract for the sale and purchase of real estate. Under the terms of its contract the purchaser "grants to the seller and/or its assigns the exclusive right *to obtain a purchaser*, at the brokerage rates which may then be in effect". (Emphasis added). The contract recites that the purpose of the provision is "to maintain the character" of the neighborhood in which the property is located; or, in other words, to insure to the seller the right to endeavor "to obtain a new purchaser" who may be acceptable to it.

The contract contemplates that in effecting such a sale the seller (Tyler Corporation) will employ the services of a real estate broker at the current brokerage rates. But it does not say that in making such sale the Tyler Corporation or any other unlicensed realtor is to act as broker. The presumption is, of course, that the contract contemplates that it will be performed in a lawful manner, that is, by employing the services of a duly licensed broker.

But even if the contract here be treated as a brokerage contract, the majority opinion improperly applies the license statute to it. It seems clear from the terms of the statute that it is to be applied only to acts done under such a contract; that is, a real estate broker is not required to have a license when he enters into a contract to sell for the owner, but only when he does sell or offer to sell. This is the vital distinction between this case and the cases in which we have held that commissions could not be recovered because the broker had no license when he made the sale.

Here the owner of the land sold it to a buyer under an

agreement that if the buyer desired to sell the property within five years, the seller, or the seller's assignee, should have the exclusive right to make the sale. The law does not require a license to enter into such a contract.

Code, 1942 (Michie), section 4359(77) makes it unlawful for a person *to act* as a real estate broker without a license. Section 4359(78) defines a real estate broker to include a person who sells, or offers for sale, or negotiates the sale of, real estate, for others; and one act of such selling, or offering to sell, makes a person a real estate broker who is required to have a license.

Unless a person *acts* as a real estate broker, as so defined, there is no requirement that he have a license. The statute does not require that a person who may by possibility become a real estate broker shall have a license. It is only the act of selling or offering to sell that requires a license.

What the contract in this case did was to give the Tyler Corporation a right to sell, if and when, within the five years, the buyer decided to sell. The Tyler Corporation did not sell or offer to sell the property. Before the sale was made it had transferred its right to the plaintiff, as defendants had contracted it might do. The plaintiff then had a real estate broker's license and was qualified to make the sale when the defendants made it for themselves, in violation of their agreement.

If the contract sued on here was illegal when made because the Tyler Corporation was not then licensed as a real estate broker, it would seem that of necessity the Tyler Corporation was amenable to the punishment prescribed by section 4359(88) for making the contract. It is somewhat more than doubtful that a warrant or indictment against it for that would long be entertained in any court.

In *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. (2d) 176, quoted from in the majority opinion, the suit was for commissions on a sale actually made, claimed by a broker who had no license when the services were performed. The brokerage contract was made some eight years before the services were

performed for which the suit was brought. The case was not decided on the ground that the broker must have had a license for each of those eight years, but the opinion states that he "had none during the period in which the negotiations hereinafter described were conducted." The plaintiffs there had no cause of action until they undertook to perform the contract, and when they did they had no license. It was the consequent illegality of what they did under the contract that made the contract unenforceable; not the fact that they had no license when the contract was made.

If a person makes a contract to sell another's property when and if such other person decides to sell, he is not required to have a real estate broker's license to make the contract. He is only required to have it if he makes sale or offers to make sale. If he procures a license after he makes the contract, but before he sells or offers to sell, he then violates no law when he makes a sale. Such is the meaning of the statute, as we read it, and so it has been held, in applying similar statutes, by all the authorities that we have seen. See *Calhoun* v. *Banner*, 254 N. Y. 325, 172 N. E. 523; 12 C. J. S., Brokers, sec. 67, pp. 155-6, and cases there cited; 8 Am. Jur., sec. 154, 1949 Cum. Supp., p. 49; Anno., 169 A. L. R. at p. 779.

If the plaintiff is otherwise entitled to recover, which it has not had opportunity to show because the court dismissed its notice of motion without hearing evidence, then we do not think recovery should be denied solely because the Tyler Corporation did not have a real estate broker's license when the contract was made.